Argued and submitted October 24,
affirmed December 24, 1979

# VALLEUR,
*Petitioner,*

*v.*

# PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

(PSRB No. 79-146, FHTC No. 5923,
Mult.Co. Nos. C72-12-3817, C72-12-1890,
C72-12-3891, C72-11-3892,
CA No. 13779)

604 P2d 439

Janice Krem, Salem, argued the cause for petitioner. With her on the brief was Mills and McMillin, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

This is a companion case to *Valleur v. McGee*, 42 Or App 391, 600 P2d 914 (1979). The facts underlying petitioner's original commitment to the Oregon State Hospital after having been found not guilty by reason of mental disease or defect are set out in that opinion and will not be repeated here. We there held that petitioner was entitled to a hearing to determine whether he should be discharged or conditionally released. While that case was pending on appeal, petitioner received such a hearing before the respondent, Psychiatric Security Review Board (PSRB). The Board determined that petitioner was still within its jurisdiction, *i.e.*, that he was suffering from a mental disease or defect and was dangerous to himself or others. ORS 161.341. The Board refused to release petitioner. Petitioner seeks judicial review of the PSRB order, maintaining that there is no substantial evidence to justify his continued commitment.[1] We affirm.

The proceeding under review is a contested case governed by ORS ch 183 insofar as it is not inconsistent with the specific provisions of the Board's enabling statutes. Our scope of review is governed by ORS 183.482(8)(d).[2] ORS 161.385(9)(c). *Cardwell v. Psychiatric Security Review Board*, 38 Or App 565, 571, 590 P2d 787 (1979).

While it does not necessarily contain evidence which would satisfy us were we trying the matter *de novo*, we hold that there is substantial evidence in this record to justify the Board's conclusion that Valleur is mentally retarded and dangerous to others.

---

[1] Petitioner conceded at oral argument that other contentions he here makes concerning PSRB's authority were decided contrary to his position in *Valleur v. McGee, supra.*

[2] ORS 183.482(8)(d) provides in pertinent part that:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

" * * *

"(d) The order is not supported by substantial evidence in the whole record."

[845]

At the hearing before the PSRB there was testimony from Mr. Meyer, a director at Fairview, and Dr. McGourty, a psychologist at Fairview. All other evidence was submitted in exhibit form.

Mr. Meyer, who has been director of Valleur's unit for the last 27-28 months, noted no problems with his behavior during that time. He indicated that presently the petitioner had stopped taking medication and no problems had arisen.

Dr. McGourty testified that he last evaluated Valleur in May, 1978, for a court hearing. He concluded that Valleur is in the upper end of the retarded scale in terms of both intellect and adaptive skills. He noted that his poor educational experiences and long period of institutionalization as a youth could be responsible for this in part and he could, in fact, be above the retarded level. He could not say "beyond a reasonable doubt" that Valleur is retarded. When pinned down to categories, he stated that Valleur is mentally disabled but found it difficult to answer yes or no as to whether or not he can be considered to have a mental defect.

Dr. McGourty testified that Valleur displays no history of psychotic problems. He does demonstrate suspicious behavior and is deficient in terms of social skills. It is hard for him to take criticism and he has difficulty handling stress. As to dangerousness, the doctor felt that Valleur is not dangerous in the usual sense; he does show a "deficit in social skills." He feels that Valleur is not dangerous in the sense that he would generally resort to physical violence against anyone. He noted that his outbursts and the arsonist acts for which he was originally institutionalized were often in retaliation to some perceived injustice or difficulty in resolving interpersonal conflicts. McGourty refused to make a prediction as to future dangerousness but did state that, if Valleur were let out and drifted into his old way of life without supervision, he might get into some difficult situations. The doctor stated that at the time of his report he found no

documentation of current dangerousness. He indicated that he went through the cottage records and found virtually nothing in the way of serious disruptive behavior save for one incident where Valleur tried to hit someone who had been teasing him.

Certain doctors' reports were introduced into evidence, among them the reports of Drs. Hofeldt and Achar. In January, 1978, a Dr. Hofeldt concluded that Valleur was borderline to mildly retarded. He diagnosed him as having an explosive personality with sociopathic traits and being potentially quite dangerous. He noted that prognosis was poor. He recommended psychiatric medication and structures to control his temper outbursts. In February, 1978, Hofeldt noted that there were no problems with arson or explosive outbursts at that time. The possibility of school release was mentioned.

In October, 1978, Dr. Achar examined Valleur. After relating his history, he concluded that Valleur is borderline mentally retarded and displays impulsive aggressive acting out behavior. He concluded that he is still quite dangerous and would continue to require a closely supervised, structured setting.

Other evidence consisted of a sketchy history of Valleur's contact with the mental health system and a 1977 plan of care; an April, 1974, report by a Dr. Furlong noting that Valleur is fairly intelligent, probably borderline or mild retarded, has no psychotic disturbance, but does have behavorial problems, notably his temper and explosive personality; and two other psychological evaluations, dated October 4, 1966, and September 11, 1973, which support the same basic diagnosis of borderline retarded and outbursts of aggressive behavior.

The above evidence is sufficient to satisfy the substantial evidence test of ORS 183.482(8)(d).

Affirmed.