Argued and submitted February 8, reversed and remanded
with instructions April 21, reconsideration denied May 29,
petition for review allowed June 17, 1980
See later issue Oregon Reports

ADAMS,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW
BOARD,
*Respondent.*

(No. 79-189, CA   15065)

609 P2d 908

Susan Longbrook, Portland, argued the cause for
petitioner. With her on the brief was Stephen M. King,
Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and W. Benny Won, Assistant Attorney General, Salem.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, C.J.*

JOSEPH, P.J.

---

*Schwab, C.J., *vice* Lee, J., deceased.

## JOSEPH, P.J.

Petitioner appeals from an order of the Psychiatric Security Review Board (PSRB) committing her to the Oregon State Hospital (OSH) for care, custody and treatment. Petitioner contends that (1) there was insufficient evidence to find at the time of the hearing that she had a mental disease or defect and presented a substantial danger to herself or to others, and (2) the standard of proof by a preponderance of evidence in criminal commitment proceedings is an unconstitutional deprivation of due process and equal protection. We need reach only the first question, which we review under ORS 183.482(8)(c).[1]

On March 9, 1979, a jury found petitioner not to be responsible by reason of a mental disease or defect for the crime of manslaughter committed on November 20, 1978. The trial court ruled that petitioner would have been convicted of manslaughter in the first degree if she had been found responsible.[2] Finding on the

---

[1] ORS 183.481(8)(c) provides:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

*See also, Valleur v. Psychiatric Review Board,* 43 Or App 843, 847, 604 P2d 439 (1979).

[2] The circumstances of the manslaughter show that petitioner had experienced unusual stress, as evidenced by the following excerpt from a psychiatrist's report:

"Ms. Adams states that on November 20 she and Mr. Mayberry went to visit his sister and had already set the wedding date. On the way home there was a snow storm and Mr. Mayberry seemed to drive very erratically. They did, however, reach home and Mr. Mayberry seemed irritable and the couple had some arguments. Ms. Adams at this point suggested that they put off the wedding for a while until they saw how they could get along. She states that at this time, Mr. Mayberry became very angry and began to harass her and then to tear up the house. She states he broke up furniture and belongings, ran about yelling, insisted she move out, then, apparently for a period of time, seemed to quiet down. At this time, Ms. Adams had called her father to come get her but then called him back and said things were quieting down. However, a little later in the evening Mr. Mayberry got out his gun, loaded it and gave it to Ms. Adams and then began to

basis of the evidence before it[3] that petitioner had a mental defect or disease and was substantially dangerous to herself and to others, the court placed her under the jurisdiction of PSRB for a maximum period of 20 years and ordered her committed to the Oregon State Hospital pending a hearing before PSRB.

On April 6, 1979, PSRB held its hearing to determine if petitioner should be confined or conditionally released, and its order issued on May 3, 1979. The findings here objected to provide:

"2. Mary Alice Adams is affected by a mental disease or defect, namely SCHIZOID PERSONALITY WITH ACUTE PSYCHOTIC EPISODES as demonstrated by the underlying facts shown by the evidence including: the evaluations by Dr. Stolzberg, M.D. and others who saw clear evidence of Ms. Adams' psychotic thought processes, emotional disturbance and impaired impulse control.

"3. Mary Alice Adams presents a substantial danger to herself as demonstrated by the underlying facts as shown by the evidence including her past history of suicide attempts.

"Ms. Adams presents a substantial danger to others as demonstrated by the underlying facts shown by the evidence including: the circumstances surrounding the crime of Manslaughter, for which she was placed under the jurisdiction of the Board and which included her shooting the victim with a shotgun."

---

frighten her. He began lunging at her in a very threatening manner and said to her at one point, 'you're going to kill me. I'm going to make you do something you *[sic]* father will not be able to get you out of.' Ms. Adams states that Mr. Mayberry at one point made a lunge at her while she had the gun in her hand and the next thing she knew he was dead. She states, 'I must have shot him, but I can't exactly remember what happened at that moment. I don't recall pulling the trigger.' Ms. Adams was somewhat vague as to what happened after that point and the next very clear thing that she can recall is being in the jail at Marion County."

[3] The trial court considered several psychiatric and psychological reports, in addition to other evidence and testimony not described in the record before us.

PSRB concluded that petitioner properly came within its jurisdiction and that the necessary supervision for conditional release did not exist. It therefore ordered her committed to the Oregon State Hospital.

The written exhibits introduced by the chairman of PSRB at the hearing included the following: the court order of March 9, 1979; a letter from a psychiatrist who had treated petitioner from August, 1976, through early November, 1978; a case history of petitioner from OSH written after her admission in March, 1979; a psychological report based on testing conducted in December, 1978, following the criminal incident; and five psychiatric reports. One of the psychiatric reports was based upon an examination and evaluation which occurred during the period from petitioner's admission to Providence Hospital on December 6, 1978, through January 5, 1979, when petitioner was transferred back to jail. Three of the other reports were based on testing and interviews conducted at the county jail on January 13, 16, and 17, 1979. There was, finally, a case summary dated March 27, 1979, written by Dr. Cloyd of OSH and based on his evaluation of petitioner during March, 1979. Dr. Cloyd, as a witness for petitioner, also testified at the PSRB hearing and reiterated the opinion contained in his case summary that he had observed no evidence of psychotic illness in petitioner.

No attorney for the state was present at the PSRB hearing. Other than petitioner's father, no other witnesses gave testimony. Of the reports, only the two dating from the first hospitalization in December and early January contained opinions that petitioner had a mental disease or defect when the reports were made.

Under the statutory scheme in effect at the time of commitment, PSRB had to hold a hearing within 20 days of the court order to determine whether the person should be committed or conditionally released.

Former ORS 161.336(1).[4] The person could also be discharged after this initial hearing should the board then determine that the person has no mental disease or defect or is not substantially dangerous to self or others. ORS 161.351(1).[5] The burden of proof in the initial hearing was allocated to the state by ORS 161.351(2):[6]

> "For purposes of this section, a person affected by a mental disease or defect in a state of remission is considered to have a mental disease or defect. A person whose mental disease or defect may, with reasonable medical probability, occasionally become active and when it becomes active will render him a danger to himself or others, shall not be discharged. The state has the burden of proving by a preponderance of the evidence that the person continues to be affected by mental disease or defect and he continues to be a substantial danger to himself or others. ***"

The initial hearing before PSRB appears to involve an independent determination by PSRB of the mental condition at the time of the hearing of the person

---

[4] ORS 161.336(1) (1977):

"Following the entry of a judgment pursuant to ORS 161.319, if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and that he presents a substantial danger to himself or others that requires that the person be committed to a state mental hospital designated by the Mental Health Division or conditionally released, the court shall order him placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment. The period of jurisdiction of the board shall be equal to the maximum sentence the court finds the person could have received had he been found responsible. The board shall hold a hearing within 20 days to determine whether the person should be committed or conditionally released. Pending hearing before the board, the person may be committed to a state hospital designated by the Mental Health Division."

[5] ORS 161.351(1):

"Any person placed under the jurisdiction of the Psychiatric Security Review Board pursuant to ORS 161.336 or 161.341, shall be discharged at such time as the board shall find by a preponderance of the evidence that the person is no longer affected by mental disease or defect or, if he continues to be so affected, that he no longer presents a substantial danger to himself or others which requires regular medical care, medication, supervision or treatment."

[6] This provision was unaffected by the 1979 amendments.

placed in its jurisdiction by the court. *See* former ORS 161.336(1), (2); ORS 161.351(1), (2).[7]

The state produced no evidence that, at the time of the hearing, petitioner continued to be affected by a mental disease or defect or continued to be substantially dangerous to herself or to others. The facts contained in PSRB's finding of fact referring to medical reports four months past were therefore insufficient to prove that the petitioner had a present mental disease or defect.[8] If the condition formally described in one psychiatric report as a "Personality Disorder" was in a state of remission at the time of the hearing, the state was required to show that the mental defect or disease could, with reasonable medical probability, have become active, thus rendering the person dangerous to him or herself or to others. ORS 161.351(2), *supra.* That evidence was lacking.

Furthermore, the facts stated by PSRB as to petitioner's dangerousness related only to past acts. *Cf. State v. Lucas,* 31 Or App 947, 950, 571 P2d 1275 (1977) (recitation of past acts in civil commitment proceeding insufficient to demonstrate present dangerousness).[9] A suicide attempt documented in the

[7] The 20-day hearing has been replaced in the 1979 amendments by a hearing within six months of the court order. While the person may apply after three months for discharge under ORS 161.341(4), the burden of proof is then on the petitioner to show that he or she is no longer affected by a mental disease or defect or is not substantially dangerous. ORS 161.341(4).

[8] ORS 183.470(2) requires that findings of fact in contested cases contain a statement of the underlying facts supporting the order. *See also Cardwell v. PSRB,* 38 Or App 565, 572, 590 P2d 787 (1979).

[9] In *State v. Lucas* we stated, *supra* at 950:

"The determination as to whether a person is dangerous beyond a reasonable doubt must focus on his or her condition at the time of the hearing. *State v. Daulton,* 30 Or App 217, 566 P2d 555 (1977); *State v. Alexander,* 26 Or App 943, 554 P2d 524 (1976); *State v. G.,* 26 Or App 197, 552 P2d 574, Sup Ct *review denied* (1976). The actions and statements of a person alleged to be mentally ill which occur prior to the hearing are, of course, probative as to the person's present mental condition. But a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person pursuant to ORS 426.005(2)."

record occurred in 1974, five years before the hearing. The homicide was an act for which a jury had determined petitioner was not legally responsible, and the circumstances surrounding it are not sufficient to prove that petitioner continued to be substantially dangerous to others.

Under ORS 161.351 the state is required at the initial hearing before PSRB to show that at the time of the hearing the person under the jurisdiction of the PSRB continues to be affected by a mental disease or defect and is or probably will be substantially dangerous to him/herself or to others. *State v. Lucas, supra.* Because that was not shown, petitioner is entitled to an order discharging her from the custody of PSRB. ORS 161.351(1).[10]

Reversed and remanded with instructions.

---

[10] *But cf. Cardwell v. PSRB, supra* n 8 at 574. We held there that lack of substantial evidence in a proceeding for revocation of conditional release under ORS 161.346(1)(a) did not entitle petitioner to a discharge since he had not applied for discharge. The holding of *Cardwell* must be viewed in light of the 1979 amendments to ORS 161.346(1)(a) which require discharge in any hearing "otherwise required by ORS 161.336 to 161.351" when the board finds that the person is no longer affected by mental disease or defect or no longer presents a substantial danger to himself or others. Or Laws 1979, ch 885, § 5. The 1979 amendments took effect after the proceeding involved in this appeal.