Argued and submitted April 23, reversed August 25, 1980

# COCHENOUR,
*Petitioner,*
*v.*
# PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

## (PSRB No. 78-31, CA 16074)

615 P2d 1155

Susan Longbrook, Portland, argued the cause for petitioner. With her on the brief was Stephen M. King, Portland.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Petitioner appeals from an order of the Psychiatric Security Review Board (PSRB or the Board) entered following a hearing held under ORS 161.336(6) (now ORS 161.336(5)) to determine whether he should be continued on conditional release or whether his conditional release should be revoked and petitioner be recommitted to the Oregon State Hospital (OSH) for care, custody and treatment. Petitioner contends that he should be continued on conditional release because (1) PSRB did not make the required finding that he presents a *substantial* danger to himself or others, (2) there was insufficient evidence to support a finding that he presents a substantial danger to himself or others, and (3) ORS 161.385(9)(c) operates to deny him equal protection of the laws because it limits the scope of appellate review of criminal commitments to one for substantial evidence. Our disposition of the case requires that we reach only petitioner's first two assignments.

In March, 1977, petitioner was placed under the jurisdiction of the PSRB for a period not to exceed 20 years after he was found by the court to be not responsible by reason of a mental disease or defect for the crimes with which he was charged. Petitioner was confined in OSH until May 14, 1979, at which time he was conditionally released. On or about August 16, 1979, petitioner's conditional release was revoked because he had violated specific conditions of the release.

Following the revocation of petitioner's conditional release, PSRB held the hearing in question to determine whether he should be continued on conditional release or recommitted. ORS 161.336(5); *Cardwell v. Psychiatric Security Review Board,* 38 Or App 565, 574, 590 P2d 787 (1979), (applying former ORS 161.336(6), now codified as ORS 161.336(5). Oregon Laws 1979, ch 885, § 3.)

■ In order to recommit an individual who has been on conditional release, PSRB must find "by a preponderance of the evidence that the person is affected by mental disease or defect and presents a substantial danger to himself or others and cannot be adequately controlled if conditional release is continued * * *." ORS 161.336(5). Under the statute the evidence and the findings must be that the person at the time of the hearing (1) is affected by a mental disease or defect, (2) is substantially dangerous to himself or others, and (3) cannot be adequately controlled on release. *See Adams v. Psychiatric Review Bd.,* 45 Or App 997, 609 P2d 908, *rev allowed* 289 Or 275 (1980).

The Board's order, issued on November 5, 1979, included the following findings:

"2. John Cochenour is affected by a mental disease or defect, as demonstrated by the underlying facts shown by the evidence including: the expert opinion of Glenn Fraser, M.D., at the hearing; Mr. Cochenour's long history of mental illness, which is well documented in the record; as well as by Mr. Cochenour's appearance and demeanor at this hearing, during which he showed inappropriate affect, inability or unwillingness to answer questions during the hearing, inappropriate smiling and facial grimacing, and his disorganized thinking, which is tangential and circumstantial.

"3. John Cochenour's mental disease or defect is now in a state of partial remission. Mr. Cochenour's mental disease does require supervision because his disease may, with reasonable medical probability, occasionally become active, and when active, render John Cochenour a danger to himself or others.

"4. This conclusion is based upon aspects of John Cochenour's condition or behavior which were demonstrated by the underlying facts shown by the evidence including: when his disease process is active, Mr. Cochenour has become paranoid, has exhibited impaired judgment, and while on conditional release, there is documentation in the record that in the opinion of some mental health experts, Mr.

Cochenour's hostility and potential explosiveness caused them to be concerned about the safety of those around him."

The Board concluded that petitioner,

"* * * being affected by a mental disease or defect which is in a state of partial remission at this time, *is under the jurisdiction* of the Psychiatric Security Review Board." (Emphasis supplied.)

The board further concluded that the necessary supervision for conditional release was not available in the community and therefore ordered petitioner committed to OSH.

The Board correctly concluded that it had jurisdiction over defendant because he had been judicially committed to its jurisdiction for a period of 20 years, the 20 year period had not expired, and defendant had not been discharged. Whether it had the *authority,* on this record, to order petitioner committed rather than continued on conditional release is the question presented here.

## I. *Sufficiency of the Finding*

■　　　Uncontradicted medical evidence established that petitioner suffers from chronic undifferentiated schizophrenia, in partial remission, and petitioner does not contest that finding. However, he contends that the Board's finding number three (above) is insufficient as a matter of law because it does not use the word *substantial* to describe the danger he presents to himself or others, as required by ORS 161.336(5).

The statutory scheme provides that only those persons who (1) continue to be affected by a mental disease or defect *and* (2) continue to present a substantial danger to themselves or others shall be committed to OSH or placed on conditional release.[1] ORS 161.295 to 161.395. Yet, the statutes mandate continued

---

[1] If the dangerousness of an individual subject to commitment can be adequately controlled with supervision and treatment and such supervision and treatment is available, the board may order him conditionally released. ORS 161.336(1) and (5); 161.351(1) and (2); 161.341(1) and 161.346(1).

institutional or conditional release supervision of an individual whose mental disease "may, with *reasonable medical probability,* occasionally become active and, when active, render him a danger to himself or others." ORS 161.336(3);[2] 161.351(2).[3] (Emphasis supplied.) It is apparent that one who meets this "reasonable medical probability" test is considered by the statutory scheme to present a substantial danger to himself or others requiring commitment or conditional release.

We conclude that finding number three, which follows the wording of the "reasonable medical probability" test of ORS 161.336(3) and 161.351(2), is an adequate finding that petitioner presents a substantial danger to himself or others.

## II. *Sufficiency of the Evidence*

Whether that finding is supported by the evidence presents a more difficult question. Our review is for substantial evidence in the record. ORS 161.385(9)(c); 183.482(8)(c).

The relevant evidence is as follows:

Dr. Fraser, petitioner's treating physician at OSH, testified as follows at the revocation hearing:

"Fraser: He was coherent, he was in good conduct, he talked freely, his effect seems to be flat, but other than that his behavior was within normal limits * * *

"Q: What was his condition in the way of mental status at the time he returned compared to prior release from the hospital?

---

[2] ORS 161.336(3) provides in part:

"* * * [A] person affected by a mental disease or defect in a state of remission is considered to have a mental disease or defect requiring supervision when his disease may, with reasonable medical probability, occasionally become active and, when active, render him a danger to himself or others. The person may be continued on conditional release by the board as provided in this section."

[3] ORS 161.351(2) contains substantially the same language as ORS 161.336(3).

"Fraser: Didn't appear to be any change.

"Q: In your opinion, if he did not receive adequate supervision and treatment, is there a reasonable medical probability that the disease would become active and render him a danger to himself or others?

"Fraser: *That's possible. We haven't seen it. Either in his stay here before or since he has been back.*

"Q: In other words, this is one of those situations where he was found to have committed an act which would have been criminal, which was dangerous, *but since his stay in the hospital there have been no particular incidents of dangerous behavior.*

"Fraser: *None.*

"Q: But you are saying that given the background and what you know about him, that there is a possibility that he would become dangerous if his disease were to become active without treatment and supervision?

"Fraser: That's a *possibility.*"(Emphasis added.)

Mr. Bardell, petitioner's mental health counselor and case monitor at Linn County Department of Health Services, also testified at the October 12 hearing. He explained that Linn County was concerned with the wisdom of placing a person who had been charged with rape and sodomy in the home of a woman whom he had never known before. Mr. Bardell testified that "letters of concern" were sent to the PSRB on June 21, 1979, shortly after petitioner's release, concerning petitioner's placement. However, a fair sampling of Mr. Bardell's testimony is as follows:

"Q: What occurred while he was on release that caused you concern?

"Bardell: Initial concern was raised, I believe, because of a lapse of communication between the time he arrived in our community and the follow-up report of the Review Board on just who John was and why he was back in our community and what our role was to be in his release. In reviewing his case and finding out what the charges were, and seeing the situation in which he was being placed with the stepmother who he didn't know before and who hadn't known him, and in view of the charges against

him, we had some question about whether it was a wise placement at that time. Out of that concern we responded back to the review board with letters of concern.

"Q: And then what was his progress from then on as far as his complying with the conditions of release and his mental health?

"Bardell: Apart from the lack of motivation which was given in earlier testimony, he complied well. He kept his appointments, he had a job, he kept us informed of his activities. He complied with the agreements of the release * * *.

"Q: Did you develop any concern about his living situation at the stepmother's?

"Bardell: There was some concern, yes, because of the conflict and the hostility growing out of the conflict * * *.

"Q: A statement has been made that 'Mr. Bardell was, or became of the opinion, that Mr. Cochenour must be removed from the Cochenour residence as he was too disruptive.' Is that correct?

"Q: Well, let's take it one part at a time. That it was important he be removed from the Cochenour residence and that some other arrangement be made.

"Bardell: Yes.

"Q: Why?

"Bardell: Because of concern I just expressed. There was tension between John and his mother, and John was feeling this tension. *We have no * * * nothing occurred since his release that would give us any indication of what John might do. But on the basis of the charges having been brought against him, and so forth, we were concerned about what could happen.*

"Q: Were any efforts made to find an alternative living situation for him?

"Bardell: Extensive * * *.

"Q: * * * You saw Mr. Cochenour at the beginning when he was first released. Did you notice any difference in his behavior towards the end, toward the revocation of his release?

"Bardell: I saw no change in his behavior apart from what could be expected from most people, I

suppose. First meeting he was tense, nervous, not knowing what to expect, but as contact progressed, he became more comfortable with us. At individual sessions with me he shared quite comfortably.

"Q: So his condition really didn't change from the time he was released?

"Bardell: No."

That witness went on to testify that it was at petitioner's request that a new living arrangement be found for him. Mr. Bardell testified:

"Bardell: It was John's suggestion that we try to attempt another living arrangement for him. It was out of his concern that a conflict existed there * * *.

"Q: Did he ever express any concern that * * * he was not functioning well, afraid he might not be controlled?

"Bardell: No, nothing apart from the stress and uncomfortableness that he felt in his living situation * * *.

"Bardell: Initially, I think (our concern) was because she was a woman who did not know John really, but I think during our session, during the time he was in the community, this became less of a concern to us, and what became more of a concern was the conflict that existed between John and his inability to meet her expectations. That more than a threat to her because she was a woman.

"Q: At no point did you see any exacerbation of the psychotic symptoms that apparently had manifested rather obviously at the time of the trial or prior to the trial?

"Bardell: No.
"* * * * *

"Q: In the course of your treatment, did you find that Mr. Cochenour presented a substantial danger to himself or any other person?

"Bardell: No."

The strongest evidence in support of the finding in question came from a letter written by Dr. Kuttner, a psychiatrist with the Linn County Department of Health, who interviewed petitioner and wrote

to PSRB on June 21, 1979, shortly after petitioner was conditionally released. He stated:

> "* * * His passive withdrawal from confrontation, combined with his psychiatric status, *strongly suggest the possibility of future violence related to his apparently controlled hostility.* Compounding the problem in his recovery, are indications of major sociopathic trends, which tend to be manifest both in his drug abuse and in the apparent lack of any ability for social learning.
>
> "Accordingly, it is my professional opinion at this point that, while Mrs. Cochenour is actively making efforts to aid her stepson, such efforts are not likely to benefit Mr. Cochenour, and *may in fact mean that the stepmother, and possibly the public at large, may be at risk of harm."* (Emphasis supplied.)

The most that can be said from the evidence[4] is that there is a *possibility* that petitioner's mental illness may become active at some time in the future, and that if it does it is *possible* that he may become dangerous. We construe the act to require that those conclusions be based upon a reasonable medical probability—not a mere possibility. We recognize the difficulty of obtaining that kind of evidence in many cases, but if the rule is to be changed, it is for the legislature, not the courts, to do so.

It seems apparent that the primary concern of the PSRB was in finding a suitable conditional release situation for petitioner. That concern is a legitimate one and is one which the legislature has required the board to consider before granting a person under its jurisdiction a conditional release. ORS 161.336(1). However, the lack of a suitable arrangement does not mean that petitioner is unfit for conditional release (see ORS 161.336(6); *Cardwell v. Psychiatric Security*

---

[4] A report on petitioner's mental status by the Providence Medical Center marked exhibit 24 and stamped as received by PSRB on November 21, 1979, was included in the record on appeal. This report was not considered by the Board and was not received by it until after entry of its order. We have not considered this document on appeal as it is not properly a part of the record. ORS 183.482(7); 183.415(9)(b).

*Review Board, supra* at 573), but only that appropriate arrangements for supervision and treatment need to be made.

Under ORS 161.336(6):

"After a hearing, the Board has two options: it may order the continuation of conditional release, or it may order commitment to a state mental hospital if it finds that the person is affected by mental disease or defect, presents a substantial danger to himself or others, and cannot be adequately controlled on conditional release. The state must prove the above elements by a preponderance of the evidence." *Cardwell . v. Psychiatric Security Review Board, supra,* 38 Or App at 568.

The state has not sustained its burden here, and petitioner is entitled to be continued on conditional release as soon as suitable arrangements can be made for his supervision and treatment.[5]

Reversed.

_____
[5] It should be noted that petitioner has not filed an application for discharge, in which case the burden of proof would be on him. ORS 161.346(1). Although the 1979 amendments to that section (Oregon Laws 1979, ch 885, § 5) permit the board to order discharge of a person under its jurisdiction after any hearing required by ORS 161.336 to 161.351 and 161.385 to 161.395, it must make the requisite findings. ORS 161.346(1)(a); 161.351(1).