No. 958                    November 5, 2025                    617

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LINUS KORBIN NORGREN,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*
Psychiatric Security Review Board
192913;
A183359

Submitted September 9, 2025.

Harris S. Matarazzo filed the brief for petitioner.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

Petitioner seeks judicial review of an order of the Psychiatric Security Review Board (PSRB), entered after a hearing, concluding that petitioner, "being affected by a qualifying mental disorder which, when active, renders him a substantial danger to others, is under the jurisdiction of the Psychiatric Security Review Board." On appeal, we understand petitioner to contend that the PSRB's determination that he is dangerous to others when his qualifying mental disorder is active is not supported by substantial evidence. ORS 161.351(2)[1]; ORS 183.482(8)(c).

We agree with petitioner, and so we reverse and remand.

## FACTS

Petitioner was found guilty except for insanity on three charges of second-degree assault stemming from an assault petitioner committed in October 2013. On November 8, 2019, the trial court ordered that petitioner be placed under the jurisdiction of the PSRB on conditional release for a maximum of 10 years. Petitioner was diagnosed with bipolar I disorder, and notably the court that adjudicated petitioner found that petitioner was not a substantial danger to others.

In a "Psychological Evaluation and Violence Risk Assessment Update" dated September 7, 2020, a psychologist who evaluated petitioner's "violence risk in the community" reported that petitioner is "considered to be at low risk of future violent acts in the community regardless of whether he is under PSRB supervision."

---

[1] Specifically, as explained below, the PSRB determined that petitioner's "qualifying mental disorder" was in "remission," but that, "when active," that disorder renders him "a substantial danger to others." Consistent with that determination, we understand the basis for the PSRB's order to be ORS 161.351(2), which provides, in relevant part:

"[A] person affected by a qualifying mental disorder in a state of remission is considered to have a qualifying mental disorder. A person whose qualifying mental disorder may, with reasonable medical probability, occasionally become active and when it becomes active will render the person a danger to others may not be discharged. The person shall continue under supervision and treatment necessary to protect the person and others."

We note that, on appeal, the PSRB points to ORS 161.351(2) in its discussion of the applicable law.

As of September 16, 2022, the terms of petitioner's conditional release required him to participate in treatment at a community-based behavioral health center; meet with his case manager weekly; participate in individual therapy weekly; submit to both scheduled and unannounced home visits; abstain from alcohol, illegal drugs, and marijuana; submit to random urinalysis tests; and participate in 80 hours of structured activity each month, as well as other conditions. While on conditional release, petitioner worked part time and shared an apartment with others. Petitioner has been symptom free and has not used medication for his bipolar disorder since 2014.

The PSRB held a hearing on September 21, 2022, and petitioner sought "discharge" from PSRB jurisdiction. The PSRB then ordered an independent evaluation pursuant to ORS 161.346(2).[2]

The report prepared by the evaluator concluded that petitioner "meets criteria for a qualifying mental disorder, specifically bipolar disorder, most recent episode manic, severe, with mood-congruent psychotic features, in full remission." Further, the report noted that petitioner's "bipolar symptoms are not currently active" but that if petitioner's "qualifying mental disorder does become active, it may cause him to become a danger to others, as it would increase his risk for future violence." The report also concluded that petitioner "presents a low risk of violence in the community," but that his "continued psychiatric and behavioral stability and positive progress will largely depend on continued abstinence [from drug use], monitoring for signs of psychiatric decompensation, and his ability to utilize support and resources when needed." Further, the report noted that if "factors that contributed to violence in the past return, his risk would increase."

---

[2] ORS 161.346(2) provides:

"To assist the board in making the determination described in subsection (1) of this section, the board may, at any time, appoint a psychiatrist or licensed psychologist to examine the person and to submit a report to the board. The report must include an opinion as to the mental condition of the person, whether the person presents a substantial danger to others and whether the person could be adequately controlled with treatment as a condition of release."

The PSRB continued the hearing on May 10, 2023, and subsequently entered the order that is before us on judicial review. In that order, the PSRB, relying largely on the report prepared by the evaluator, concluded that petitioner, "being affected by a qualifying mental disorder which, when active, renders him a substantial danger to others, is under the jurisdiction of the Psychiatric Security Review Board."

Specifically, in the order, regarding whether petitioner continues to have a "qualifying mental disorder," the PSRB framed the issue before it as whether petitioner's qualifying mental disorder was "in remission or has resolved." Relying on the evaluator's report, for three principal reasons, the PSRB found that petitioner's mental disorder was merely "in remission."

First, in its order, the PRSB noted that the evaluator explained that, although "it is possible that [petitioner] falls within the population of individuals with bipolar I disorder who show good outcome[s] and thus ha[ve] not exhibited another mood episode in a prolonged period of time," the "mere absence of a mood episode within the past nine years does not necessarily equate [to] the absence of manic or depressive episodes in the future or of the disorder in general." As the evaluator observed, the Diagnostic and Statistical Manual of Mental Disorders (DSM) "indicated that 90% of people go on to have a recurrent mood episode," but that the DSM "does not specify the timeline at which future episodes are likely to reoccur." The evaluator further noted that research "has shown that subthreshold symptoms may account for much of the chronicity of bipolar disorder," explaining that "subsyndromal manic and hypomanic symptoms were found to be three times more common than symptoms at the threshold for mania."

Second, in its order, the PSRB pointed to what it described as the evaluator's "juxtaposition between [petitioner's] stress at the time of the instant offense and in the recent years." On that issue, the PSRB quoted a section of the report explaining the "facilitating role" that "stressful life events * * * can play in the development of mental illness when combined with biological predisposition," that petitioner was experiencing stressful life events when he "first

exhibited mood symptoms," and that, although "records have consistently suggested that [petitioner] has successfully navigated subsequent stressful life events without the reemergence of psychiatric symptoms, such as incarceration and Covid-19, it is also important to note that stress is multifaceted and can manifest in different forms." As a result, the report explained that the evaluator could not "with certainty, discount the possibility of another mood episode in the face of other stressors that may impact [petitioner], particularly given his young age."

Third, in its order, the PSRB considered what it described as the PSRB's "ameliorating influence[] *** in [petitioner's] psychiatric stability." In doing so, it relied on a section of the report that provides that petitioner's "life since 2013 has been carefully managed by providers in order to reduce the likelihood of another mood episode," and noted that petitioner "has responded well to non-medical treatments for bipolar," which it called "a positive sign for the course of his illness, should he continue to be provided this structured treatment."

Next, having determined that petitioner's mental disorder was merely in "remission" and not "resolved," the PSRB determined that petitioner is a substantial danger to others when his mental disorder is active. In doing so, the PSRB adopted the view of the evaluator that "the most salient risk factors" rendering petitioner dangerous are "his history of violence, major mental illness, characterological traits, traumatic experiences, and supervision response." It further noted that the evaluator's report explains that petitioner's "history of violence has occurred exclusively in the context of mania and psychosis" and that although there was only one such "episode of violence," it was "an act of severe violence where the victim was injured in a number of ways"; that petitioner's "past exposure to trauma, when triggered, may affect [his] decision making abilities and reaction towards perceived threats"—*i.e.*, he may "believe himself to be at greater risk of being harmed and react pre-emptively to thwart a threat that is in fact not present"; and that when petitioner experiences manic symptoms his "underlying grandiosity may be magnified," which, in turn, "could

manifest as feelings of invincibleness or aggression when he feels threatened, humiliated, insulted, or provoked."

Concerning petitioner's dangerousness, the PSRB also pointed to a section of the evaluator's report describing petitioner's "lack of emotional empathy *** in [petitioner's] discussion of his offense." In the evaluator's view that "could negatively impact his capacity to appreciate other people's experiences, which may result in some difficulties for [petitioner] to navigate challenges in the community without supervision and increase his risk for negative interactions with others that could escalate to a violent incident."

Thus, as noted, largely based on the evaluator's report, the PSRB determined that petitioner is "affected by a qualifying mental disorder which, when active, renders him a substantial danger to others."

## ANALYSIS

*Standard of review.* We review agency orders for errors of law, substantial evidence, and substantial reason. *Walters v. PSRB*, 341 Or App 41, 47-48, 574 P3d 49 (2025). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). And we have explained that "'[s]ubstantial reason exists where the agency has articulated a rational connection between the facts and the legal conclusion that the agency draws from them.'" *Walters*, 341 Or App at 48 (quoting *Rinne v. PSRB*, 326 Or App 777, 781, 533 P3d 802 (2023), *rev den*, 371 Or 825 (2024)).

*The Parties' Arguments.* Petitioner argues that substantial evidence does not support the PSRB's determination that petitioner is "affected by a qualifying mental disorder which, when active, renders him a substantial danger to others." Petitioner contends that his extended time without any sign of his bipolar disorder reactivating shows that he is not a danger to others. Petitioner notes that the evaluator's report prepared for the PSRB stated petitioner "presents a low risk of violence in the community," that his qualifying mental disorder is "in full remission," and his "bipolar symptoms are not currently active." Petitioner points to language

in the report that states "if [petitioner]'s qualifying mental disorder does become active, it may cause him to become a danger to others, as it would increase his risk for future violence," but notes it also states, "[petitioner] has not been on psychotropic medication in almost ten years, during which he has not presumably exhibited active manic or psychotic symptoms." Petitioner states that previous manic episodes were exacerbated by marijuana use and substance abuse which by themselves are not qualifying mental disorders. Furthermore, a psychiatrist who routinely treated petitioner during his conditional release stated that his "bipolar disorder is in sustained remission without medical intervention," and a psychologist had concluded that "petitioner is a low risk of future violent acts regardless of whether he is under PSRB supervision."

The PSRB responds that "petitioner's behavior that led to PSRB jurisdiction while his disorder was active was both random and violent." The PSRB cites the evaluator's conclusion that "if [petitioner]'s qualifying mental disorder does become active, it may cause him to become a danger to others, as it would increase his risk for future violence." The PSRB further argues that the evaluator's report shows that the structure provided by the PSRB's supervision "likely buffered the typical stressors that an individual in the community might otherwise have through having access to and routine check-ins with his treatment team," without which "it is unclear how [petitioner] may respond to the potential increase in stressors associated with increased independence and responsibilities in the community." Additionally, the PSRB notes that the evaluator's report expressed concern over petitioner's lack of insight into his disorder and concluded "it is unclear if [petitioner] will obtain appropriate psychiatric and medical services and adhere to recommended medication regimen." The PSRB asserts that all of this amounts to substantial evidence to support the PSRB's findings.

*Analysis.* ORS 161.351(1) provides, "Any person placed under the jurisdiction of the Psychiatric Security Review Board *** shall be discharged at such time as the board, upon hearing, finds by a preponderance of the

evidence that the person is no longer affected by a qualifying mental disorder or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment." Additionally, ORS 161.351(2) provides:

> "a person affected by a qualifying mental disorder in a state of remission is considered to have a qualifying mental disorder. A person whose qualifying mental disorder may, with reasonable medical probability, occasionally become active and when it becomes active will render the person a danger to others may not be discharged. The person shall continue under supervision and treatment necessary to protect the person and others."

The "'reasonable medical probability' language used in [ORS 161.351(2)] requires expert testimony that, with reasonable medical probability, an individual's condition could become active and render him or her dangerous." *Beiswenger v. PSRB*, 157 Or App 192, 197, 970 P2d 229 (1998) (internal citations omitted). A "reasonable medical probability" is more than a "mere possibility." *Cochenour v. PSRB*, 47 Or App 1097, 1106, 615 P2d 1155 (1980).

The PSRB has adopted a rule defining "danger" and "substantial danger" as a "risk that the person will inflict injury or harm on others." OAR 859-010-0005(8). Under that rule, evidence of a danger "may include information about historical patterns of behavior, recent behavior, or verbal or physical threats, which have caused injury or harm or would place a reasonable person in fear of sustaining injury or harm." *Id.* Nevertheless, as we have noted, although "[t]he actions and statements of a person alleged to be mentally ill which occur prior to the hearing are, of course, probative as to the person's present mental condition," a "mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person." *Rolfe v. Psychiatric Security Review Board*, 53 Or App 941, 947, 633 P2d 846, *rev den*, 292 Or 334 (1981) (internal quotation marks omitted).

Notably, in ORS 161.351, the "legislature did not expressly assign the burden of proving the bases for PSRB

jurisdiction to either party." *Rinne v. PSRB*, 297 Or App 549, 554, 443 P3d 731 (2019) (citing ORS 161.351). The PSRB, however, has adopted a rule, OAR 859-050-0055, "assigning the burden of proof." *Id.* Under that rule, who has the burden of proof "depends on the type of hearing." *Id.* The parties do not dispute that the state, not petitioner, bore the burden of proof before the PSRB. *See* OAR 859-050-0055.

Turning back to this case, we have considered the record and the PSRB's order in light of our standard of review, and we conclude that the PSRB's order was not supported by substantial evidence. The PSRB's conclusion relies on a speculative chain of events. That is to say, the PSRB determined that *if* petitioner's condition were to become active again it *may* cause him to be a danger to others because it would *increase his risk* of future violence.

The difficulty with that line of reasoning is that there is no probative evidence in the record concerning the likelihood that *petitioner's* condition will become active again.

First, the PSRB noted that the DSM indicates that "90% of people" who have a mood episode "go onto have a recurrent mood episode." That is of no probative value with regard to whether petitioner's mental disorder may "become active" because the DSM does not "specify the timeline at which future episodes are likely to reoccur." Put another way, as we understand the PSRB's position as reflected in the order on judicial review, the section of the evaluator's report referencing the DSM provides evidence that, because petitioner had a mood episode that resulted in violence nine years prior to the evaluator's report, petitioner has a 90 percent chance of a recurrent mood episode. But that section does not provide evidence as to the likelihood that an individual will have another "mood episode" after having spent nine years both symptom and medication free. *See Haidar v. PSRB*, 324 Or App 129, 135, 524 P3d 986 (2023) (PSRB order not supported by substantial evidence where "none of the exhibits cited by PSRB address petitioner's more recent physical and mental condition, which significantly changed in the years leading up to the PSRB hearing").

Second, with regard to "stressors," as noted above, the evaluator recognized that the "*possibility of another mood episode* in the face of * * * stressors that may impact" petitioner could not be "discounted," although petitioner had not had another mood episode when facing stressors such as "incarceration and Covid-19." But a mere "possibility" that cannot be "discounted" is insufficient to establish "danger" based on a mental disorder that is in remission. *See Cochenour*, 47 Or App at 1106 (in analyzing a case under ORS 161.351(2), noting "[t]he most that can be said from the evidence is that there is a possibility that petitioner's mental illness may become active at some time in the future, and that if it does, it is possible that he may become dangerous," but that "[w]e construe the act to require that those conclusions be based upon a reasonable medical probability not a mere possibility").

Third, with regard to the PSRB relying on the "ameliorating influence [of the PSRB's supervision] * * * in [petitioner's] psychiatric stability," and that petitioner has been successful while under the PSRB's jurisdiction, that is not evidence that his mental disorder will become active if *not* under the PSRB's jurisdiction. That is, we do not see how that aspect of the PSRB's rationale could provide a reason to deny petitioner discharge from the PSRB's supervision; under that rationale, the PSRB would be able to keep petitioner under their supervision indefinitely, merely because he has been successful while under their supervision. That is not a proper way for PSRB to consider whether to discharge someone who has been successful while in treatment.

Moreover, in our view, the record lacks substantial evidence that *if* petitioner has another mood episode, he *will* be a danger to others. In reaching the conclusion that he would, the PSRB relied heavily on a single incident of violence by petitioner that occurred in October 2013 when petitioner was experiencing "mania and psychosis." But the PSRB does not explain how that evidence is probative of the risk that, should petitioner have another "mood episode," it will similarly result in "mania and psychosis" as opposed to manifesting in some other manner.

In contrast to the speculative evidence of risk due to petitioner's bipolar disorder, it is not speculative that

petitioner has gone over nine years without his mental disorder manifesting or engaging in violence, despite that he has not taken any medication to control his mental disorder during that time (and, thus, there is no danger he stops taking medication if discharged from the PSRB's jurisdiction due to his "lack of insight"). During those nine years, according to the evaluator retained by the PSRB, petitioner has "successfully navigated subsequent stressful life events without the reemergence of psychiatric symptoms, such as incarceration and Covid-19." Additionally, he has taken numerous actions to care for various aspects of his health, he is employed, and he has healthy relationships with family members, and he has a support network.

Petitioner is presently in "in full remission," and his "bipolar symptoms are not currently active." And as noted, a psychologist opined in an evaluation prepared in 2020 that petitioner is "considered to be at low risk of future violent acts in the community regardless of whether he is under PSRB supervision." And the evaluator retained by the PSRB noted that petitioner "presents a low risk of violence in the community."

We conclude that the state did not meet its burden before the PSRB, and the PSRB erred.[3]

Reversed and remanded.

---

[3] Although we have considered the board's order in this case as being premised on ORS 161.351(2), we would reach the same conclusion had the board's order been relying directly on ORS 161.351(1). That is, there is not substantial evidence in the record that petitioner presents "a substantial danger to others" as set forth in ORS 161.351(1).