Submitted December 5, 2022, reversed and remanded July 6, 2023

NICHOLAS JUDSON RINNE,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

Psychiatric Security Review Board
991597; A174602

533 P3d 777

Petitioner seeks judicial review from three orders of the Psychiatric Security Review Board (PSRB) that denied his discharge from PSRB's jurisdiction, arguing that substantial evidence did not support PSRB's conclusion that his dangerousness was because of his qualifying mental disorders. *Held*: For PSRB to retain jurisdiction, the person's qualifying mental disorder must itself be the source of their dangerousness. As such, PSRB's decision in this case, that jurisdiction was warranted because petitioner's qualifying diagnoses exacerbated the dangerousness caused by his nonqualifying diagnoses, was not supported by substantial evidence and reason.

Reversed and remanded.

Harris S. Matarazzo filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Petitioner seeks judicial review from three orders of the Psychiatric Security Review Board (PSRB), each of which denied his discharge from PSRB's jurisdiction and continued his commitment to the Oregon State Hospital. Petitioner raises four assignments of error. Because the issue is dispositive, we write to address the fourth assignment, in which he argues that PSRB's decisions were not supported by substantial evidence and substantial reason. We reverse and remand.

## I.  BACKGROUND

Petitioner has been under PSRB's jurisdiction since 1999, when he was found guilty except for insanity of several crimes involving child sex abuse and committed to the Oregon State Hospital for up to 60 years. *See* ORS 161.327(1) (authorizing commitment to state hospital of a person found guilty except for insanity of a felony, if the person "is affected by a qualifying mental disorder and presents a substantial danger to others"). He has been a patient at the hospital ever since, except for five years between 2008, when he was granted a conditional release, and 2013, when it was revoked after he violated its terms by visiting a community pool without permission. This is not the first time that his commitment has been reviewed by this court; several years ago, we reversed and remanded two PSRB orders continuing its jurisdiction. *Rinne v. PSRB*, 297 Or App 549, 443 P3d 731 (2019) (*Rinne II*); *Rinne v. PSRB*, 299 Or App 275, 448 P3d 654 (2019) (*Rinne I*). On remand, after a consolidated proceeding, PSRB again decided that jurisdiction was warranted, and those are the orders now before us.

Some context is necessary to understand the unusual posture of this case. For a person to be subject to PSRB's jurisdiction, they must have a "qualifying mental disorder"[1] which causes them to present a "substantial

---

[1] Until 2018, the statutes used the term "mental disease or defect." In updating the terminology, the legislature did not intend to change its meaning. Or Laws 2017, ch 634 ("[T]he purpose of this 2017 Act is to replace the term 'mental disease or defect' with the term 'qualifying mental disorder' and to retain the meaning of the replaced term, without making a substantive change to Oregon law.").

danger to others." *See* ORS 161.351(1)[2] ("Any person placed under the jurisdiction of the Psychiatric Security Review Board under ORS 161.315 to 161.351 shall be discharged at such time as the board, upon a hearing, finds by a preponderance of the evidence that the person is no longer affected by a qualifying mental disorder or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment."); OAR 859-010-0005(8) ("'Substantial Danger' * * * means a demonstration or previous demonstration of intentional, knowing, reckless or criminally negligent behavior which places others at risk of physical injury *because of* the person's qualifying mental disorder." (Emphasis added.)).

Personality disorders, which include sexual conduct disorders like pedophilia, are not "qualifying mental disorders." *See* ORS 161.295(2)[3] ("[T]he term 'qualifying mental disorder' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor does the term include any abnormality constituting solely a personality disorder."); *Beiswenger v. PSRB*, 192 Or App 38, 54, 84 P3d 180, *rev dismissed as improvidently allowed*, 337 Or 669 (2004) (concluding that the legislature intended "personality disorder" to include sexual conduct disorders, alcohol dependency, and drug dependency).

As a result, for PSRB to retain jurisdiction, the record must contain substantial evidence that petitioner was affected by a mental health condition other than a personality disorder (such as pedophilia) that caused him to present a substantial danger to others. The issue in this case is whether petitioner's dangerousness was "because of" a qualifying disorder.

Petitioner's diagnoses have varied considerably over time. When he was first admitted to the hospital in 1999, he was diagnosed with autism spectrum disorder,

---

[2] ORS 161.351 was amended in 2017; however, because those amendments were not substantive and do not affect our analysis, we refer to the current version of the statute in this opinion.

[3] ORS 161.295 was amended in 2017; however, because those amendments were not substantive and do not affect our analysis, we refer to the current version of the statute in this opinion.

schizophrenia, pedophilia, and another personality disorder. A few years later, the schizophrenia diagnosis was ruled out after petitioner admitted to having malingered symptoms of psychosis in order to be hospitalized rather than incarcerated. *Rinne II*, 297 Or App at 554-55. He was later diagnosed with major depressive disorder, which has since been in sustained remission. The autism spectrum diagnosis was ruled out in 2014, after petitioner's treatment team determined that it could not be supported. Different treatment providers have at times also diagnosed petitioner with various anxiety disorders.

As of 2015, petitioner's diagnoses were pedophilia, obsessive-compulsive personality disorder, major depressive disorder in sustained remission, and two anxiety disorders—other specified anxiety disorder and illness anxiety disorder.[4] Petitioner's treatment team concluded that those anxiety disorders—the only remaining active qualifying diagnoses[5]—did not cause his potential dangerousness. The team presented its reasoning to the hospital's risk review panel, which is comprised of mental health professionals who are not members of the patient's treatment team and is tasked with determining the hospital's official opinion about jurisdictional issues. *Rinne II*, 297 Or App at 564. The panel concurred with the treatment team, and accordingly requested that PSRB discharge petitioner.

After a hearing, PSRB denied the requested discharge and continued petitioner's commitment. Petitioner appealed, and while the appeal was pending, petitioner requested another hearing, at which the hospital again supported discharge. That hearing took place in 2017 and resulted in another denial, which petitioner again appealed. As noted, we reversed and remanded both denials for lack of substantial evidence and reason. *Rinne II*, 297 Or App at 566 (reversing and remanding the 2017 order); *Rinne I*,

---

[4] In 2016, PSRB switched from using the DSM-IV-TR to the updated DSM-5, which renamed "hypochondriasis" to "illness anxiety disorder" and "anxiety disorder not otherwise specified" to "other specified anxiety disorder." 55 Or Bull 191 (Jan 1, 2016). Because there was no significant change in petitioner's symptomatology, we use the updated terms throughout this opinion.

[5] PSRB does not make any arguments on appeal related to petitioner's major depressive disorder.

299 Or App at 276 (*per curiam* opinion relying on the reasoning of *Rinne II* to reverse and remand the 2015 order). On remand, PSRB consolidated the matters into a single proceeding and again denied discharge. PSRB issued three orders, one based on the record as of 2015, the second based on the record as of 2017, and the third based on the record as of 2020, when the hearing on remand took place. The parties agree that all three orders must be valid for PSRB to retain jurisdiction.

## II.  DISCUSSION

We review agency orders for errors of law, substantial evidence, and substantial reason. *Dorn v. Teacher Standards and Practices Comm.*, 316 Or App 241, 243, 504 P3d 44 (2021). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). Substantial reason exists where the agency has articulated a rational connection between the facts and the legal conclusion that the agency draws from them. *Dorn*, 316 Or App at 243.

The statutes governing PSRB jurisdiction require that PSRB discharge a person who "no longer presents a substantial danger to others," and, conversely, prohibit the discharge of a person who "is a substantial danger to others." ORS 161.351(1); ORS 161.346(1). In implementing those statutes, PSRB adopted rules defining "substantial danger" as a demonstration of "behavior which places others at risk of physical injury because of the person's qualifying mental disorder." OAR 859-010-0005(8).

The parties agree that petitioner meets both components of that definition of "substantial danger." First, they agree that petitioner has the "qualifying mental disorders" of other specified anxiety disorder and illness anxiety disorder. Second, the parties also agree that petitioner is likely to engage in behavior which places children at risk of sexual abuse. The parties disagree, however, as to the existence of a causal nexus—whether that danger is "because of" a qualifying mental disorder. Petitioner argues that his dangerousness is "because of" his nonqualifying mental disorder of pedophilia. PSRB, on the other hand, contends that

petitioner's dangerousness is "because of" his qualifying anxiety disorders in that, "when combined with" pedophilia, they reduce the likelihood that petitioner will take measures to mitigate his pedophilia such as alert his doctor or seek treatment. Put another way, PSRB contends that petitioner's qualifying mental disorders exacerbate the dangerousness caused by his pedophilia, and thus the dangerousness is "because of" those qualifying mental disorders. The parties' arguments require us to determine the meaning of "because of" in OAR 859-010-0005(8).

A.    *Rule Construction*

When we construe an administrative rule, "we begin with the text and context, just as we would for interpreting a statute." *OR-OSHA v. Loy Clark Pipeline, Co.*, 320 Or App 205, 211, 514 P3d 544, *rev den*, 370 Or 471 (2022). Just as when interpreting a statute, we may also look to the rule's adoption history. *Id*. Additionally, when an agency interpretation of a rule "is plausible, given the rule's text and context and any other applicable sources of law, then we defer to that interpretation." *Nacey v. Board of Massage Therapists*, 287 Or App 228, 233, 401 P3d 275 (2017).

As noted, the text of the rule defines "substantial danger" as a demonstration of "behavior which places others at risk of physical injury *because of* the person's qualifying mental disorder." OAR 859-010-0005(8) (emphasis added). The word "because" is not defined, meaning that we look to its "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). The most relevant dictionary definition of "because" is "for the reason that" and "on account of the cause that." *Webster's Third New Int'l Dictionary* 194 (unabridged ed 2002). "Reason" is further defined as "a consideration * * * leading to an action or course of action." *Id*. at 1891. Under the plain text of the rule then, the "qualifying mental disorder" must be what leads to or causes the "behavior which places others at risk of physical injury." OAR 859-010-0005(8).

The statutory context of the rule's definition of dangerousness further supports the conclusion that the qualifying mental disorder must be the thing that causes a person's dangerousness. *See Growing Green Panda v. Dept. of*

*Human Services*, 302 Or App 325, 332, 461 P3d 1026 (2020) (When construing an administrative rule, "we consider the text of the rule in its regulatory and statutory context."). Specifically, the statute governing discharge from PSRB jurisdiction prevents discharge of any person "whose qualifying mental disorder may, with reasonable medical probability, occasionally become active and when it becomes active *will render* the person a danger to others." ORS 161.351(2) (emphasis added). Under that framework, the qualifying mental disorder must be what "renders" the person dangerous to support continued PSRB jurisdiction.[6]

Another related statute provides additional helpful context. ORS 161.295(1) delineates the circumstances required for a criminal defendant to be found "guilty except for insanity," a precursor to placement within the jurisdiction of PSRB. ORS 161.327(1) (providing for the determination of placement within the jurisdiction of PSRB "[a]fter the defendant is found guilty except for insanity"). Under that statute, a defendant may be found guilty except for insanity if they are unable to appreciate the criminality of their conduct or conform to the law "as a result of a qualifying mental disorder." ORS 161.295(1). We have interpreted that language to mean that the qualifying mental disorder must "be sufficient—on its own—to bring about the requisite incapacity." *State v. Meiser*, 323 Or App 674, 685, 524 P3d 130, *rev allowed*, 371 Or 60 (2023). That interpretation is consistent with a conclusion that the qualifying disorder must itself be the source of a person's dangerousness in order to justify continued PSRB jurisdiction.

The rule's adoption history also provides clues elucidating whether dangerousness must be directly caused by the qualifying diagnosis. The previous version of OAR 859-010-0005 tracked the statutory language more precisely and, in the definition of "mental disease or defect,"

---

[6] The statute also requires discharge for a person who "is no longer affected by a qualifying mental disorder or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment." ORS 161.351(1). That formulation further suggests that the qualifying mental disorder is what requires care, treatment, and supervision, not a nonqualifying diagnosis. In petitioner's case, it is his nonqualifying diagnosis of pedophilia that requires treatment to prevent dangerousness, not his anxiety.

prohibited the discharge of a person "whose mental disease or defect may, with reasonable medical probability, occasionally become active, and when active, render the person a danger to others." OAR 859-010-0005(6) (December 8, 1994). The rule was revised to move discussion of causation to the definition of "substantial danger," but nothing indicates an intent to change the substance of the requirement. 54 Or Bull 464 (February 1, 2015).

In sum, the text, context, and adoption history of OAR 859-010-0005(8) indicate that "because of" means that the person's dangerousness must stem from their qualifying disorder. PSRB's contrary interpretation, that jurisdiction is warranted when a qualifying disorder exacerbates the danger posed by a nonqualifying disorder, is not plausible. *See Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 537, 185 P3d 446 (2008) (concluding that an agency's interpretation of its own rule is implausible where it "is inconsistent with the wording of the rule and its context" (emphasis omitted)).

B. *Application*

Having concluded that the qualifying mental disorder must be what renders the person dangerous, we must determine whether that standard is met for each of petitioner's hearings, that is, whether substantial evidence exists that petitioner's dangerousness was caused—not just exacerbated—by his qualifying anxiety disorders. This record does not contain such evidence for the 2015 and 2017 hearings.

We focus on the record as of 2017, which includes the record as of 2015; PSRB's reasoning is substantially the same in both orders. At the hearings, the board heard from petitioner's treating psychiatrist, Dr. Roff, as well as from a member of the hospital's risk review committee, Dr. Sethi, and from an expert retained by petitioner, Dr. Johnson.[7] PSRB also considered the entirety of petitioner's patient file.

Dr. Roff opined that petitioner's "risk of sexual recidivism if released to the community stems from his

_____
[7] Dr. Roff testified at both hearings, Dr. Sethi testified only in 2015, and Dr. Johnson testified only in 2017.

diagnosis of pedophilia and borderline traits." She explained that petitioner's personality was marked by rigid thinking, oppositional traits, and difficulty forming trusting relationships with adults. At the time of the underlying offenses, it manifested in an identity disturbance whereby he identified with his victims, seeing himself as childlike and adopting a Russian name and accent. More recently, it made him unable to understand why his unauthorized trips to a community pool caused his conditional release to be revoked, which enraged him, and as a result, he became uncooperative with hospital staff. Dr. Roff also testified that it put him at risk of "kidding himself" about his choices; for instance, he saw those trips merely as exercise, and failed to recognize the concomitant risk of recidivism that they posed.

As to petitioner's anxiety disorders, Dr. Roff's view was that they largely stemmed from his personality disorders. She explained that illness anxiety disorder is "a persistent concern regarding the possibility of having illnesses for which there is no medical basis and a lack of reassurance when told by medical professionals that there isn't cause for concern." In petitioner's case, it was most pronounced in his struggles with hypersexuality, in that he believed that it was caused by a physical issue such as a testicular tumor or high testosterone levels, despite numerous tests ruling out any such conditions. She connected that persistent belief with his rigid thinking and difficulty trusting his medical providers.

Regarding petitioner's other specified anxiety disorder, Dr. Roff explained that it is largely "organized around being labeled or designated as a person with a sex offense history," in that he believed that he would face severe retaliation if people knew about that history. She testified that some of that anxiety was situational and realistic under the circumstances, but that his symptoms were also greater than what one would expect from a typical person, which is why she chose that diagnosis. In her view, petitioner's symptoms were a byproduct of his personality disorders and his attempts to control his antisocial traits. She further testified that petitioner's anxiety is primarily protective, because he is terrified of being caught reoffending. She also cited a scientific meta-study which found no statistically

significant correlation between anxiety and risk of sexually reoffending.

Dr. Sethi testified that the risk review committee concurred with Dr. Roff's opinion that petitioner's dangerousness stemmed from his pedophilia and personality disorder, and that his anxiety was more likely to inhibit reoffending than promote it. He explained that in some cases, severe anxiety can cause people to act out impulsively, but that in petitioner's case, his offenses were more planful, in that he built up relationships with his victims for months before sexually abusing them. He additionally testified that there was no indication that petitioner engaged in pedophilic behavior in order to relieve his anxiety; rather, his anxiety was about the consequences of such behavior. Dr. Johnson agreed that petitioner's pedophilia was the driver of his dangerousness, and that his anxiety disorders had no causal connection to his likelihood of reoffending.

Despite those experts' opinions, PSRB found that petitioner's anxiety disorders, in combination with his pedophilia, rendered him more dangerous than he would otherwise have been without them. In reviewing PSRB's order, "[o]ur duty is to evaluate the board's logic, not to supply it." *Knotts v. PSRB*, 250 Or App 448, 455, 280 P3d 1030 (2012) (citation omitted). Here, PSRB reasoned that petitioner's anxiety prevented him from engaging in sex offender treatment because he was afraid that his peers would find out about his history as a result. PSRB further reasoned that if petitioner were to be discharged, his anxiety about retaliation would likely lead him to leave Oregon or even the United States, in order to live somewhere that he perceives to be less threatening to sex offenders, which would make it more difficult to monitor his activities. As to petitioner's illness anxiety disorder, PSRB reasoned that it also decreased the likelihood of him engaging in treatment because it caused him to attribute his hypersexuality to a physical condition, despite his providers' belief that its source was psychological.[8] Those reasons, however, are mechanisms for

---

[8] To the extent that PSRB suggests that petitioner's anxiety disorders caused his hypersexuality, we are unable to find evidence in the record supporting that conclusion. On the contrary, Dr. Roff opined that its source was likely his pedophilia.

petitioner's anxiety disorders to exacerbate—not cause—the danger posed by his pedophilia. Accordingly, PSRB's analysis is not consistent with the meaning of "because of" in OAR 859-010-0005(8).

PSRB further argues that petitioner's dangerousness cannot be solely attributed to his pedophilia because he has also engaged in dangerous behaviors towards adults. In particular, he has engaged in some grooming behavior toward younger, lower-functioning peers in the hospital, and, while on conditional release, engaged in stalking and harassing behavior toward gymnastics and boxing coaches. We are not persuaded, however, that substantial evidence supports the conclusion that petitioner's anxiety caused those behaviors. Even if PSRB is correct that those examples of dangerousness were not directly caused by pedophilia, that alone does not mean that they were caused by anxiety. Indeed, none of petitioner's providers, as reflected in his hospital file, connected those behaviors to petitioner's anxiety.

In sum, PSRB's conclusion that petitioner's dangerousness was "because of" his anxiety disorders is not supported by substantial evidence and reason. Regarding substantial reason, in light of our conclusion that the person's qualifying mental disorder must be what causes their dangerous behaviors, PSRB's reasoning that petitioner cannot be discharged because his anxiety exacerbated his dangerousness cannot stand. Further, regarding substantial evidence, there is no evidence in the record that petitioner's behavior, which places others at risk of physical injury, was "because of" petitioner's qualifying mental disorder as required under OAR 859-010-0005(8).

Reversed and remanded.