No. 486 June 4, 2025 41

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

LUKE HOKULE WALTERS,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

Psychiatric Security Review Board
102478; A175054

Submitted June 3, 2024.

Harris S. Matarazzo filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert A. Koch, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded for proceedings consistent with this opinion.

**KAMINS, J.**

Petitioner seeks review of an order by the Psychiatric Security Review Board (PSRB) following a "five year" jurisdictional hearing finding him under its jurisdiction, continuing him on "conditional release," and denying his community treatment provider's request that he be "discharged" from the PSRB's jurisdiction. Petitioner contends that he is no longer under the PSRB's jurisdiction because he is no longer affected by a qualifying mental disorder and requests that the PSRB order his discharge. ORS 161.346(1)(a); ORS 161.351(1). We agree with petitioner that, based on the record as a whole, no reasonable person could find that he continues to have a qualifying mental disorder, and so we reverse.[1]

## I.  BACKGROUND

The PSRB has exclusive jurisdiction over individuals with a qualifying mental disorder who are found guilty except for insanity of a felony and present a substantial danger to others. ORS 161.327. If the PSRB, however, finds by a preponderance of the evidence that a person under its jurisdiction "is no longer affected by a qualifying mental disorder, or, if so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment," the PSRB must release that person from its jurisdiction. ORS 161.351(1); ORS 161.346(1)(a);.[2]

---

[1]  Our conclusion that the PSRB failed to establish that petitioner has a qualifying mental disorder obviates the need to address petitioner's second assignment of error, arguing that, in the event that the PSRB is correct that he has a qualifying mental disorder, there is insufficient evidence in the record to support the PSRB's determination that petitioner presents a "substantial danger to others."

[2]  ORS 161.346(1)(a) provides:

"When the Psychiatric Security Review Board conducts a hearing under ORS 161.315 to 161.351, the board shall enter an order and make findings in support of the order. If the board finds that a person under the jurisdiction of the board *** [i]s no longer affected by a qualifying mental disorder, or, if so affected, no longer presents a substantial danger to others, the board shall order the person discharged from commitment and conditional release."

ORS 161.351(1) provides:

"Any person placed under the jurisdiction of the Psychiatric Security Review Board under ORS 161.315 to 161.351 shall be discharged at such time as the board, upon a hearing, finds by a preponderance of the evidence that the person is no longer affected by a qualifying mental disorder or, if

A "qualifying mental disorder" is defined by the legislature mostly by what it is not: It does not include "an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor does the term include any abnormality constituting solely a personality disorder." ORS 161.295(2).[3] By rule, the PSRB has interpreted "qualifying mental disorder" to mean, as relevant here,

> "any diagnosis of a psychiatric condition which is a significant behavioral or psychological syndrome or pattern that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM 5-TR) of the American Psychiatric Association."

OAR 859-010-0005(15)(b); *see also* ORS 161.387 (the PSRB "may promulgate such interpretive rules as the board deems necessary or appropriate to carry out its statutory responsibilities").

Petitioner has been under PSRB jurisdiction since 2010, after he assaulted a stranger with a tire iron and pleaded guilty except for insanity to first-degree assault. At that time, petitioner believed he was in a "holy war with the forces of evil" and was diagnosed with schizoaffective disorder and bipolar I disorder, both "qualifying mental disorders." Petitioner was initially placed at Oregon State Hospital (OSH) and, in 2015, was conditionally released to Kellogg Creek, a long-term transitional residential treatment program. At the time of petitioner's conditional release, several of his treating psychiatrists at OSH noted that he displayed "little if any symptoms suggestive of ongoing

---

so affected, no longer presents a substantial danger to others that requires regular medical care, medication, supervision or treatment."

[3] ORS 161.295, in full, provides:

"(1) A person is guilty except for insanity if, as a result of a qualifying mental disorder at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the term 'qualifying mental disorder' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor does the term include any abnormality constituting solely a personality disorder."

bipolar disorder" and was not on any medications for treatment of bipolar disorder.

While at Kellogg Creek in 2016, petitioner's treating psychiatrist, Dr. Kim, diagnosed him with schizotypal personality disorder with narcissistic traits, which she believed explained why other providers incorrectly diagnosed petitioner with schizoaffective disorder and bipolar disorder with psychotic features, as those diagnoses present with similar symptoms. Schizotypal personality disorder, like other personality disorders, is not a qualifying mental disorder. ORS 161.295(2). In an opinion requested by the PSRB, Dr. Kim opined that petitioner did not present with any psychotic symptoms at that time or at any point in the previous nine years. Dr. Kim also noted that, other than several days of treatment with an antipsychotic medication in 2002, petitioner had never been treated with an antipsychotic or other psychotropic medication. She wrote that "[her] opinion is that the symptoms that were interpreted as psychosis[] can be entirely accounted for by [petitioner's] personality disorder and an adjustment disorder (in 2002)."

In Dr. Kim's treatment notes, she also wrote that petitioner "does not meet criteria for a bipolar or psychotic disorder." Dr. Kim also reported that petitioner "experienced an episode of adjustment disorder in 2002 following family stressors and homelessness," but his symptoms "resolved in the absence of sustained treatment." Accordingly, Dr. Kim recommended petitioner be discharged from PSRB jurisdiction, and petitioner petitioned the PSRB for discharge.

At petitioner's discharge hearing back in 2017, the PSRB considered Dr. Kim's recommendation. The PSRB also considered an evaluation from an independent clinical and forensic psychologist, Dr. Duncan. That evaluation opined that petitioner continued to have bipolar I disorder, albeit largely in remission with continued monitoring and support. The PSRB also considered an opinion from an evaluator from Clackamas County. The county evaluator recommended continued jurisdiction, given the lack of agreement between Dr. Kim and Dr. Duncan, but also noted that she "had never seen firsthand evidence of a [qualifying mental disorder]" and that the symptoms displayed by petitioner

"may be attributed to a personality disorder." The PRSB continued its jurisdiction over petitioner.

In 2017, petitioner transferred from Kellogg Creek to a treatment program run by Cascadia. At the time of transfer, an evaluation at Cascadia concurred with Dr. Kim that petitioner had a diagnosis of "alcohol use disorder, in sustained remission in a controlled environment, cannabis use disorder, and other specified personality disorder." That evaluation specifically ruled out bipolar disorder as a diagnosis.

At Cascadia, petitioner began treatment with a new psychiatrist, Dr. Mohandessi. In May 2018, Dr. Mohandessi reported that petitioner's current diagnosis was narcissistic personality disorder and that petitioner did not meet the criteria for any other psychiatric disorder. Cascadia accordingly petitioned the PSRB for a jurisdictional discharge.

At petitioner's discharge hearing in 2018, however, the PSRB again continued its jurisdiction over petitioner, finding that he continued to suffer from a mental disorder, "most likely [b]ipolar [d]isorder." The PSRB based this on the historical bipolar diagnoses from OSH and Kellogg Creek (prior to Dr. Kim's diagnosis), as well as a diagnosis reported by Dr. Mohandessi in April, prior to him concluding that petitioner no longer had bipolar disorder.[4]

In 2019, while still under Cascadia's care, petitioner relapsed several times on alcohol and marijuana. In one of those instances, petitioner drove while under the influence and ended up climbing a tree in front of a stranger's home. Cascadia's treatment team reported that the incident was motivated by petitioner's substance use and inability to set healthy boundaries around substances in the community.

In July 2019, Dr. Mohandessi, for the first time, wrote in his treatment notes that petitioner's current psychiatric disorders "include Adjustment Disorder and Narcissistic Personality Disorder." Dr. Mohandessi did not include any

---

[4] It is not clear why Dr. Mohandessi reported that petitioner had bipolar disorder in 2018. His testimony at petitioner's hearing in 2020 was that he had never diagnosed petitioner with bipolar disorder and that sometimes old diagnoses "carry over."

explanation in his notes as to why he included an adjustment disorder as one of petitioner's then-current psychiatric disorders. It is not clear if Dr. Mohandessi was referencing Dr. Kim's opinion (that petitioner had an adjustment disorder in 2002), if it was related to petitioner's more-recent relapses, or something else.

Shortly after Dr. Mohandessi wrote that petitioner's then-current disorders included an adjustment disorder, Jones, a licensed professional counselor at Cascadia who worked with petitioner, wrote in her treatment notes that petitioner's symptoms appeared to qualify him for an adjustment disorder with depressed mood:

> "[Petitioner's] diagnosis has been unclear since his entry into the Cascadia program. Over the past year, his symptoms have become more comprehensible and clearer to diagnose. He has not met criteria for Bipolar Disorder as he has not been observed to experience a manic episode or a major depressive episode since his entry into the Cascadia program. However, he has been observed to experience hopelessness and sadness after a stressful event that is out of proportion to the severity or intensity of the stressor. As a result his diagnosis has been changed from Bipolar Disorder to Adjustment disorder with depressed mood."

Jones also wrote that petitioner presented with "symptoms of depressed mood, low self-worth, feelings of failure, avolition, anhedonia, disorganization, and impulsive behaviors."

In August 2020, Cascadia requested jurisdictional discharge on the basis of petitioner not having a qualifying diagnosis.

Petitioner's "five-year" jurisdictional hearing was held in 2020. ORS 161.336(6).[5] Prior to that hearing, Dr. Mohandessi reported to the PSRB that petitioner's current diagnoses include narcissistic personality disorder and adjustment disorder and that, due to these diagnoses, petitioner does not meet the criteria for a qualifying mental

---

[5] The PSRB is required to hold a hearing after a person under its jurisdiction has been on conditional release for five years. ORS 161.336(6). At that hearing, the PSRB "shall review the person's status and determine whether the person should be discharged from the jurisdiction of the board." *Id*. Cascadia's request for jurisdictional discharge coincided with the time for petitioner's "five-year" hearing.

disorder to maintain current PSRB jurisdiction.[6] The PSRB also received a report from a forensic psychologist, Dr. Orf, who was retained by petitioner. In that report, Dr. Orf concluded that petitioner met the criteria for diagnoses of narcissistic personality disorder; other specified personality disorder, schizotypal traits; and, alcohol use disorder—none of which are qualifying mental disorders. Cascadia again recommended jurisdictional discharge of petitioner.

At petitioner's hearing, the PSRB heard testimony from Dr. Mohandessi, Dr. Orf, and a member of petitioner's treatment team at Cascadia. All three testified that petitioner did not have a qualifying mental disorder. The state opposed jurisdictional discharge, arguing that petitioner was still affected by his "historical diagnoses of a mood disorder of some kind." The state did not explain, at the hearing, whether it was referring to petitioner's historical diagnosis of bipolar disorder, depressive disorder, or some other mood disorder.

The PSRB denied petitioner's request for discharge on the basis of petitioner having a qualifying mental disorder, but it did not explain in its order what mental disorder the PSRB believed petitioner to have. Petitioner petitioned for judicial review. In 2022, while the petition was pending, the PSRB withdrew its order and entered a continuation of conditional release with a new order on reconsideration that stated petitioner's exact qualifying mental disorder—adjustment disorder with depressed mood—and it is from that order that petitioner seeks our review.[7]

## II. ANALYSIS

"When a person over whom the [PSRB] exercises jurisdiction *** is adversely affected or aggrieved by a final order of the [PSRB], the person is entitled to judicial review of the final order." ORS 161.348(1). "We review agency

---

[6] Dr. Mohandessi also reported that, when active, petitioner's diagnoses do not make him a danger to others.

[7] The PSRB alerts us to the fact that petitioner's conditional release was later revoked in February 2022 and, at the time of filing, he resided at the OSH. That fact has no bearing on the legal issue of whether there was substantial evidence to support the finding that, at the time of his five-year hearing, petitioner continued to have a qualifying mental disorder.

orders for errors of law, substantial evidence, and substantial reason." *Rinne v. PSRB*, 326 Or App 777, 781, 533 P3d 802 (2023), *rev den*, 371 Or 825 (2024). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). "Substantial reason exists where the agency has articulated a rational connection between the facts and the legal conclusion that the agency draws from them." *Rinne*, 326 Or App at 781.

A.  *PSRB Decision*

At petitioner's jurisdictional hearing, Dr. Mohandessi, petitioner's treating psychiatrist at Cascadia, testified that, since a diagnostic clarification assessment by his staff back in 2018, he did not believe that petitioner had a qualifying mental disorder. He noted that, especially in "treatment plan" reports, historical diagnoses are often "carried over" from previous providers, but that he had "never diagnosed [petitioner] with any type of bipolar disorder be it specific or nonspecific," and any adjustment disorder petitioner once had was fully resolved:

> "DR. MOHANDESSI: Well, previously, *though this is not a current or active diagnosis*, at Cascadia we had diagnosed him with adjustment disorder really due to life stressors and his life circumstances. At that time, there was considerable stress around his family, housing, but I don't—I don't see those same stressors being present or active at this time and *he does not meet criteria currently for an adjustment disorder diagnosis*."

(Emphases added.)

The PSRB also heard similar testimony from Dr. Orf that petitioner no longer had a qualifying mental disorder and that any adjustment disorder had resolved and was not going to reoccur:

> "DR. ORF: There's a discussion of an adjustment disorder previously. I didn't see the necessary documentation to support an adjustment disorder diagnoses [*sic*]. Based on my review of the more recent record those issues that were present at the time have—have clearly resolved and *adjustment disorder is not a cyclic disorder*. It does not recur as a specific diagnosis for a point in time. It's a reaction to a

stressor. So if it was present in the past *an adjustment disorder is certainly resolved*, at least at the time of my evaluation of [petitioner]."

(Emphases added.)

As the end of the hearing, the PSRB concluded that petitioner was affected by a qualifying mental disorder

"as demonstrated by the underlying facts shown by the evidence in the record and the testimony provided at the hearing (see Exhibits 301, 309, 310, 318, 321, 323, 325, 326, 330, and 331, all of which diagnose [petitioner] with an Adjustment Disorder).

"* * * * *

"This finding is supported by the evidence of longstanding mental health diagnoses that began in [petitioner's] adolescence and persisted in adulthood for several years both prior to and subsequent to his instant offense, as evidenced in Exhibits 6, 7, 9, 11, 12, 13, 26, 33, 55, 86, 103, 115, 116, 120, 122, 129, 133, 195, 197, 240, 249, 257, 281, 290, and 309, all of which contain at least one qualifying mental health diagnosis."

The PSRB also cited to evidence that petitioner presented with symptoms of depression at his April 2019 mental health assessment and to professional opinions found throughout the record that petitioner was "most likely to experience increased symptoms, particularly mood-related symptoms, during significant periods of stress and copes with [those] symptoms by using alcohol or other substances." Finally, the PSRB noted that petitioner's mental-health-related symptoms become more severe when petitioner lives independently and petitioner had not yet secured independent housing, despite being approved for independent living for over two years. The PSRB ultimately found that petitioner continued to be affected by an adjustment order with depressed mood, a qualifying mental disorder.[8]

---

[8] The parties appear to agree, as a threshold matter, that adjustment disorder with depressed mood is a qualifying mental disorder. A qualifying mental disorder, by statute, is one that results in a person "lack[ing] substantial capacity either to appreciate the criminality of the[ir] conduct or to conform the[ir] conduct to the requirements of law." ORS 161.295(1). In the absence of argument from the parties, we express no opinion as to whether an adjustment disorder meets the statutory standard.

Turning to the evidence supporting the PSRB's decision, the PSRB order offered a lengthy list of exhibits, identified only by number and without further explanation. We endeavor to group that lengthy list into several categories. The first group (exhibits 240, 257, 281, 290, 301, 309, 310, 318, 321, 323, 325, 326, 330 and 331) are all notes from petitioner's time at Cascadia. Those exhibits reflect that the Cascadia treatment team diagnosed him with an adjustment disorder and also reported that petitioner had previously been diagnosed with bipolar disorder (although that diagnosis was no longer "current"). All but three of the exhibits diagnosing petitioner with adjustment disorder are from petitioner's treating psychiatrist, Dr. Mohandessi. The remaining Cascadia exhibits consist of a mental health assessment and treatment plan by Jones, a counselor, which were based on Dr. Mohandessi's diagnosis of adjustment disorder (exhibits 309 and 310), and a letter from a social worker at Cascadia, informing the PSRB of petitioner's intent to request a jurisdictional discharge based on that exhibit (exhibit 326).

The next group of exhibits (exhibits 6, 7, 9, 11, 12, 13, 26, 33, 55, 86, 103, 115, 116, 120, 122, 129, 133, 195, 197, 240, 249, 257, 281, 290, and 309) all contain diagnoses of bipolar disorder. The bulk of those exhibits are from petitioner's initial treatment, upon entering PSRB jurisdiction, at OSH from 2010-2014. The exhibits not from petitioner's initial admission to OSH include behavioral health evaluations by Clackamas County in 2014 in preparation for petitioner's conditional release (exhibits 103, 120). Those evaluations rely on the diagnoses of bipolar contained in the OSH progress reports. That group of exhibits also contains diagnostic reports in 2015 and 2016 continuing petitioner's diagnosis of bipolar (exhibits 129 and 195).

The next category of exhibits is one that, the PSRB contends, reflect that petitioner "continues to suffer from signs and symptoms of depression" and a lack of coping skills causing petitioner to relapse with drugs and marijuana (exhibits 7, 8, 12, 18, 19, 26, 72, 195, 249, 296, 302, 303, 309, 310, 312, 322, and 326). Those exhibits are treatment plans, progress reports, and other reports, that reference

symptoms of depression and poor coping skills.[9] For example, in exhibit 322, petitioner's case manager, Harris, wrote:

> "Client is struggling with motivation and symptoms of depression related to family issues, recent issue (urinating in public) which resulting in him [*sic*] being excluded from all public libraries, and barriers towards finding housing in the community."

B.  *Substantial Evidence*

We conclude that the PSRB's finding—that petitioner has a qualifying mental disorder of an adjustment disorder with depressed mood[10]—is not supported by substantial evidence for several reasons. First, all of the exhibits that the PSRB cited to in its order attribute that diagnosis to petitioner's treatment team at Cascadia. At the time of the hearing, however, that same treatment team unanimously testified that petitioner no longer had a qualifying mental disorder. In fact, in contrast to the PSRB's order, there was no testimony at the hearing that petitioner had an adjustment disorder at all.

In addition, petitioner's treatment team at Cascadia appears to have based its impressions entirely from Dr. Mohandessi's diagnosis. Although Dr. Mohandessi did, in mid-2019, diagnose petitioner with adjustment order with depressed mood, by December 2019, Dr. Mohandessi opined that petitioner's adjustment disorder was "in partial remission with no medical intervention," and at the hearing, Dr. Mohandessi testified that petitioner's adjustment disorder had resolved. That timeline appears consistent with Dr. Orf's testimony that an adjustment disorder is not a "cyclic disorder" and does not "reoccur as a specific diagnosis;" instead, it is a "reaction to a stressor."[11]

---

[9] Some of these exhibits contain diagnoses of adjustment disorder and bipolar disorder; however, it appears that the PSRB is citing them here solely for the exhibits' mention of specific psychiatric symptoms that the PSRB finds significant. For example, exhibit 249 is cited both as a reference to petitioner's historic bipolar disorder, as well as a reference to petitioner's symptoms and lack of coping skills.

[10] Although the PSRB referenced the historical diagnosis of bipolar disorder, that does not appear to be the basis for its decision. The most recent diagnosis of bipolar occurred in 2016, and it had been specifically ruled out by 2018.

[11] That timeline is also consistent with the description of an adjustment disorder contained in *Diagnostic and Statistical Manual of Mental Disorders* § 2, Diagnostic Criteria & Codes, "Trauma and Stressor-Related Disorders" (5th ed

Moreover, all the evidence supporting the PSRB's determination that petitioner suffers from adjustment disorder consists of historical records authored by Dr. Mohandessi or based on his diagnosis, yet the PSRB still *discredited* Dr. Mohandessi's testimony that petitioner did not have adjustment disorder. We are mindful that the PSRB need not defer to a treatment provider in finding that petitioner remains affected by a qualifying mental disorder, provided that its findings are supported by substantial evidence and substantial reason. *See Einstein v. PSRB*, 330 Or 121, 128, 128 n 4, 998 P2d 654 (2000) (the PSRB is "not required to accept" the testimony of a petitioner's treating psychologist "without considering the rest of the record"). But the PSRB's decision to discredit the testimony of a medical professional must be made "in light of the other evidence in the record." *Id.* at 128 n 4. Here, there was *no* evidence in the record that petitioner had a current diagnosis of a qualifying mental disorder; rather, the PSRB relied on a historical diagnosis from the very doctor it discredited.[12]

The PSRB's reliance on old exhibits of a historical, resolved diagnosis further calls its conclusion into question. The PSRB cited to copious exhibits—exhibits 6, 7, 9, 11, 12, 13, 26, 33, 55, 86, 103, 115, 116, 120, 122, 129, 133, 195, 197, 240, 249, 257, 281, 290, and 309—that all contained historical mental health diagnoses other than adjustment disorder, mainly of bipolar disorder, to support its finding that petitioner has an adjustment disorder. But there was no evidence in the record that a historical diagnosis of bipolar disorder is linked to a current diagnosis of adjustment disorder. No witness testified to that connection, and no exhibit contained any indication that petitioner's historical

---

2013) (an adjustment disorder, "[b]y definition *** lasts no longer than 6 months after the stressor or its consequences have ceased.").

[12] The PSRB order explained its decision to disregard the testimony from Dr. Mohandessi by asserting that Dr. Mohandessi's opinion that petitioner does not have a qualifying mental health diagnosis "is fairly recent and appears to overlook or at least be inconsistent with recent record written by other members of [petitioner's] treatment team." However, as discussed above, the cited exhibits from Cascadia not authored by Dr. Mohandessi did not contain independent diagnoses. The PSRB further cited exhibit 301 as evidence that Dr. Mohandessi had diagnosed petitioner with bipolar as recently as 2019. However, Dr. Mohandessi testified that he never held that opinion and explained that exhibit 301 reflected a "carry-over" diagnosis.

diagnosis somehow predisposed him to the current diagnosis. If anything, the only evidence to connect petitioner's prior and current diagnoses demonstrated that symptoms of a *narcissistic personality disorder* (not an adjustment disorder with depressed mood) could be confused with bipolar disorder.[13]

In short, petitioner's treatment team and independent evaluators all consistently averred that petitioner no longer had a qualifying mental disorder. The PSRB's order relied on historical, resolved diagnoses and thus was not supported by substantial evidence.[14]

Reversed and remanded for proceedings consistent with this opinion.

---

[13] The PSRB also noted in its order that evidence of certain symptoms—specifically, of depression and relapses in response to stressors—would allow a reasonable person to conclude that petitioner has an adjustment disorder with depressed mood, whether active or in remission. While the PSRB cited to numerous exhibits related to petitioner's *symptoms*, those exhibits do not support that petitioner continues to have a qualifying *diagnosis*.

[14] As mentioned, our disposition obviates the need to address the PSRB's finding that, due to a qualifying mental disorder, petitioner is a danger to others. However, we note that there was ample evidence in the record pertaining to petitioner's dangerousness, including the violent event that brought him into PSRB jurisdiction, as well as a general lack of insight into his responsibility for violence. While Dr. Mohandessi testified that petitioner lacks a qualifying diagnosis, he also testified that petitioner does present a danger to others.